**Charles L. KNAPP and Beverley E. Knapp, Petitioners–Appellants,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent–Appellee.**

**No. 478, Docket 88–4124.**

United States Court of Appeals, Second Circuit.

April 4, 1989.

York, sitting by designation.

Before LUMBARD, WINTER and MAHONEY, Circuit Judges.

## ON PETITION FOR REHEARING

The petition for rehearing states that the panel erred when it implied that there was no statement of the Senate's views on the so-called "Fringe Benefit Moratorium," Pub.L. No. 95–427, 92 Stat. 996 (1978) ("moratorium"). The petition further states that the Senate issued a report virtually identical to the House Report quoted in the panel opinion. The Senate Report referred to, however, S.Rep. No. 433, 96th Cong., 1st Sess. 3–5, *reprinted in* 1979 U.S.Code Cong. & Admin.News 2594, 2596–98, was not issued in conjunction with the enactment of the moratorium. Rather, it concerned an extension of the moratorium by a later Congress, *see* Pub.L. No. 96–167, 93 Stat. 1275 (1979), and does not affect the analysis of the panel opinion.

In any event, we believe that the legislative history when read as a whole indicates that the pertinent language of the House Report quoted in the panel opinion, and later repeated in the Senate Report on the extension of the moratorium, is merely an admonition by the committees to the Internal Revenue Service ("IRS") and was never intended to govern judicial enforcement of the moratorium. The moratorium arose out of a "discussion draft" issued in 1975 by the Department of the Treasury that contained a number of proposed rules which, if promulgated, would alter explicit administrative practices with regard to fringe benefits. *See* 40 Fed.Reg. 41118 (Sept. 5, 1975). The proposed changes sparked controversy, and the discussion draft was formally withdrawn on December 28, 1976. *See* 41 Fed.Reg. 56334 (Dec. 28, 1976). Notwithstanding that withdrawal, Congress believed that, as the body primarily responsible for tax policy, it needed time to study these complex issues, and did not want its role preempted by premature actions of the IRS. H.R.Rep. No. 1232, 95th Cong., 2d Sess. 5, *reprinted in* 1978 U.S.Code Cong. & Admin.News 2508, 2510. In order to foreclose that possibility, it decided to prohibit the promulgation of final regulations for a designated period of time and thus enacted and later extended the moratorium.

That that legislation relates only to final regulations is clear. The title of the Act is "An Act to Prohibit the Issuance of *Regulations* on the Taxation of Fringe Benefits, and for Other Purposes" (emphasis added). The pertinent language states: "[n]o fringe benefit *regulation* shall be issued—(1) in final form on or after May 1, 1978, and on or before December 31, 1979, or—(2) in proposed or final form on or after May 1, 1978, if such *regulation* has an effective date on or before December 31, 1979." (Pub.L. No. 95–427, 92 Stat. 996) (emphasis added). "[F]ringe benefit regulation" is defined by the statute as "a *regulation* providing for the inclusion of any fringe benefit in gross income by reason of Section 61 of the Internal Revenue Code of 1954." *Id.* (emphasis added). Moreover, Section 2 of the statute, a section that does not concern fringe benefits, explicitly refers to a particular revenue ruling and "to any other regulation, ruling or other decision." *Id.* Where Congress intended to affect more than final regulations, therefore, it did so in operative statutory language.

The Report of the House Ways and Means Committee (there was no Senate Report) stated that: "[t]he bill, as amended, contains prohibitions on the issuance of *final regulations* relating to the taxation of employee fringe benefits before 1980, and the issuance of proposed or *final regu-*

*lations* on that subject which would be effective before 1980." H.R.Rep. No. 1232, 95th Cong., 2d Sess. 3, *reprinted in* 1978 U.S.Code Cong. & Admin.News 2508 (emphasis added). The Report further declared that "[t]he bill provides that the Treasury Department (Internal Revenue Service) is precluded from issuing *final regulations* under section 61, which would govern the income tax treatment of fringe benefits prior to 1980 ... [and that] no *regulations* relating to the treatment of fringe benefits ... are to be proposed which would be effective prior to 1980." *Id.* at 2510 (emphasis added).

The Report then stated:

*While the provisions of this bill relate only to the issuance of regulations,* it is the intent of the committee that the Treasury Department will not alter, or deviate from, in any significant way the historical treatment of fringe benefits through the issuance of revenue rulings or revenue procedures, etc.

*Id.* (emphasis added). When this language is read in context, we believe it clear that it was merely an admonition by the committee to the IRS and is of no relevance to judicial enforcement of the moratorium. Indeed, there is no other explanation for the stark statement that the "bill relate[s] only to the issuance of regulations." Moreover, the use of undefined phrases such as "in any significant way" and "etc." supports the view that the statement was intended merely to caution the IRS against other actions without seeking the views of the committee.

THE PETITION IS DENIED.